'UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| REBECCA W. THURMAN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:12-cv-178-CLC-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant.* | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rebecca W. Thurman brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 14 & 16]. Plaintiff alleges the Administrative Law Judge ("ALJ") (1) did not state what weight, if any, the ALJ gave to the treating physician's opinion; (2) did not properly analyze the opinion of Plaintiff's treating physician; (3) improperly employed a "sit and squirm" test; and (4) erred by finding that caring for a child is inconsistent with disability. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 16] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.     ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for DIB on February 28, 2008, alleging disability as of February 18, 2007 (Transcript ("Tr.") 17). Plaintiff's claim was denied initially and upon

reconsideration, and she requested a hearing before the ALJ (Tr. 17). The ALJ held a hearing on October 6, 2010, during which Plaintiff was represented by an attorney (Tr. 17). The ALJ issued a decision on October 22, 2010 and determined Plaintiff was not disabled because there were jobs she could perform in the national economy (Tr. 14-25). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff filed the instant action on June 5, 2012 [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Background

Plaintiff was 40 years old on her alleged disability date, February 18, 2007 (Tr. 24). Plaintiff could not give her age at the hearing, but she knew her date of birth (Tr. 34). Plaintiff completed high school and attended one year of college (Tr. 34). Plaintiff has past relevant work as a packer, press operator, sorter, and quality inspector (Tr. 24, 110). Plaintiff's most recent employment was at a plastic molding factory, where she worked as a press operator and inspector (Tr. 101, 110). Plaintiff's impairments began after she was in a car accident on June 25, 2005 (Tr. 34, 130, 180). Plaintiff continued to work after the car accident until February 18, 2007 (Tr. 35, 101).

### B.    Medical Records

It is not necessary to engage in a lengthy recitation of Plaintiff's extensive medical records given the specific issues raised by the parties. Instead this review will only briefly summarize the most pertinent evidence at issue based on the parties' arguments.

After her car accident on June 25, 2005, Plaintiff received a CT scan of her cervical spine, which showed no fractures (Tr. 176). Plaintiff did have a 13 centimeter laceration on her scalp and forehead that required closure (Tr. 176-77). Plaintiff was able to return to work after

2

her accident, although she had persistent back and neck pain (Tr. 238). Plaintiff's physician, Dr. Jenny Byrd, noted that Plaintiff was performing a physical job, working eight and a half hours per day, five days per week (Tr. 227). Plaintiff worked full-time until February 13, 2007, the date that Dr. Byrd assessed Plaintiff as having an "exacerbation of neck pain and radiation" (Tr. 228). Dr. Byrd prescribed pain medicine and a muscle relaxer to Plaintiff, and ordered an MRI (Tr. 228). Plaintiff's MRI results were normal, except for a "mild broad base disc bulge/disc ostephyte complex at C5-6," with "mild disc protrusion into the neural foramina unilaterally right greater than left" and "minimal mass effect upon the exiting nerve root bilaterally more significant on the right" (Tr. 225-26). Plaintiff has not worked since February 18, 2007, and has chronic neck pain, back pain, nerve damage, hip and leg problems, depression, memory problems, and anxiety (Tr. 100, 199, 215-17).

Dr. Byrd has treated Plaintiff's chronic neck pain and back pain, and Dr. Byrd has prescribed pain and muscle relaxer medications, injections of pain medication and anti-inflammatory steroids (Tr. 215-20). Dr. Byrd prescribed Plaintiff a cervical collar (Tr. 219-20). Dr. Byrd has also treated Plaintiff for depression and anxiety by prescribing medications (Tr. 220).

On April 17, 2007, Dr. Byrd completed an attending physician's statement (Tr. 267-70). In her physician's statement, Dr. Byrd diagnosed Plaintiff as having "broad based disc & mass effect bilateral nerve" (Tr. 268). Dr. Byrd classified Plaintiff as having a "severe limitation; incapable of minimal activity or sedentary work" (Tr. 268). Dr. Byrd opined Plaintiff was only occasionally able to stand, sit, walk, drive, bend, or enter data in an eight-hour work day and stated Plaintiff could not lift or carry more than five pounds (Tr. 268).

On May 13, 2008, Dr. Shane Roberts performed a physical exam of Plaintiff at the request of Social Security's Disability Determination Services (Tr. 195-200). Dr. Roberts diagnosed Plaintiff with depression, anxiety, and chronic neck and low back pain (Tr. 199). Dr. Roberts found Plaintiff could occasionally lift and carry up to ten pounds, up to one-third of an eight-hour workday, but Plaintiff was unable to bend, squat, or stoop (Tr. 199). Dr. Roberts further found Plaintiff could stand or walk with normal breaks for a total of two hours in an eight-hour workday, and Plaintiff could sit with normal breaks for a total of six hours in a workday (Tr. 199). Dr. Roberts stated Plaintiff could sit six hours within an eight-hour period, but would need more frequent breaks to change her position (Tr. 199). Dr. Roberts opined Plaintiff had some postural limitations due to her cervical collar neck brace, and that she was unable to look over her shoulders (Tr. 199). Dr. Roberts found Plaintiff was able to perform several daily living activities without assistance, including writing, personal hygiene, dressing herself, making telephone calls, managing finances, traveling independently, and taking medication on her own (Tr. 199-200). Dr. Roberts also found Plaintiff was not able to do household chores or shopping on her own without assistance (Tr. 200).

On July 3, 2008, Frank R. Pennington, M.D. completed a physical residual functional capacity assessment (Tr. 201-208). Dr. Pennington is a state agency medical consultant. In his assessment, Dr. Pennington diagnosed Plaintiff with chronic neck and lower back pain, depression, and anxiety (Tr. 203). Dr. Pennington noted that Plaintiff was wearing a cervical collar, had a slow but normal gate, and was able to get on and off the examination table with only some difficulty (Tr. 203). Dr. Pennington questioned Plaintiff's cooperation and reliability (Tr. 203). Dr. Pennington opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds (Tr. 203). Dr. Pennington further opined that Plaintiff could occasionally

balance, stoop, kneel, crouch, and crawl (Tr. 203). In Dr. Pennington's opinion, Plaintiff's ability to reach in all directions, including overhead, was unlimited (Tr. 204). Plaintiff's ability to handle (gross manipulation) and finger (fine manipulation) was limited, but Plaintiff was capable of frequent handling and fingering with her right upper extremity (Tr. 204). Dr. Pennington opined that Plaintiff's ability to feel was unlimited (Tr. 204). Dr. Pennington further opined that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk (with normal breaks) for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push and pull without restriction (Tr. 202). Dr. Pennington noted that his findings differed significantly from Dr. Byrd's assessment of Plaintiff (Tr. 207).

On July 17, 2008, Steven Cartwright, M.S., performed an examination of Plaintiff's mental health (Tr. 209-214). Mr. Cartwright diagnosed Plaintiff with major depressive disorder, recurrent, severe without psychiatric features, as well as anxiety disorder (Tr. 213). Mr. Cartwright stated Plaintiff was tearful and had a restricted affect; had anxiety, particularly socially; and had passive suicidal thoughts (Tr. 212). Mr. Cartwright opined that, from a mental standpoint, Plaintiff has no impairment in her ability to understand or remember, moderate impairment in her ability to sustain concentration, moderate impairment in her ability to interact appropriately with others, and mild to moderate impairment in her ability to adapt to change in work requirements (Tr. 213).

On May 2, 2008, Plaintiff completed a pain questionnaire (Tr. 118-19). Plaintiff reported that her pain in her neck and shoulders began after her car accident, but became unbearable after she changed positions at her job (Tr. 118). Plaintiff reported that the pain spreads down her back, through her hips to her knees, and encompasses her skull (Tr. 118). Plaintiff stated that her

5

pain gets worse from activity or stress, and that her migraine headaches last for 24 hours (Tr. 118). Plaintiff reported that she is taking various medications, which only provide relief for two to three hours, but which also cause side effects including drowsiness, dizziness, and nausea (Tr. 118). Plaintiff wears her neck brace to help with the pain, and she also uses heating pads and hot baths to help reduce the pain (Tr. 119). Plaintiff reported that she can no longer do yard work, house work, or play with her child (Tr. 119).

Plaintiff also completed a supplemental pain report, in which she reported pain that radiates to her knee from her hip and groin (Tr. 120-21). Plaintiff reported that she sits on a heating pad to help with the pain, which prevents her from walking or standing (Tr. 121). Plaintiff reported that she has not been able to afford to see a doctor about the pain that has spread to her knee (Tr. 121).

On May 3, 2008, Plaintiff completed a function report, in which she described her average day and her abilities (Tr. 122-127). Plaintiff reported that in an average day, she wakes her daughter up, drives her to school, picks up the house, showers and brushes her teeth, and then picks up her daughter from school (Tr. 122). Plaintiff then helps her daughter make a sandwich and tells her to do her chores (Tr. 122). Plaintiff's daughter sweeps, vacuums, mops, picks things up off the floor, and takes care of the pets (Tr. 123).

C.      **Hearing Testimony**

At the hearing on October 6, 2010, Plaintiff testified that she had to stop working due to her pain, because it got to the point where she could not raise her arm and she "had needles going down [her] neck" (Tr. 33). Plaintiff testified about her functional limitations, and stated that she wears her cervical collar at home (Tr. 35-40). Plaintiff did not wear the cervical collar at the hearing and testified that she only wears it at home because she does not "like people looking at

[her]" (Tr. 37). Plaintiff testified about how her daughter helps her around the house, doing the dishes, laundry, and vacuuming, as Plaintiff could no longer do those chores herself (Tr. 38). A vocational expert also testified at the hearing (Tr. 40-46).

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B.    The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since February 18, 2007, the alleged onset date (Tr. 19). At step two, the ALJ

7

found Plaintiff had the following severe impairments: cervical degenerative disc disease with radiation into the shoulder, lumbar degenerative disc disease, a recurrent major depressive disorder without psychotic features, and an anxiety disorder (Tr. 19). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 19-20). Specifically, the ALJ considered Listings 12.04 and 12.06 and other listings under 12.00 (Tr. 19-20). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform unskilled sedentary work except she was limited to only occasional postural maneuvers and frequent use of the right upper extremity for handling and fingering (Tr. 20). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 24). At step five, the ALJ noted that Plaintiff was a younger individual, 18-49, had at least a high school education, and was able to communicate in English (Tr. 24). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 24). These findings led to the ALJ's determination that Plaintiff was not under a disability as of February 18, 2007 (Tr. 25).

## IV.    ANALYSIS

Plaintiff asserts four arguments: first, that the ALJ erred by failing to explicitly state the weight given to the treating physician's opinion; second, that the ALJ erred by failing to properly analyze the treating physician's opinion; third, that the ALJ erred in assessing Plaintiff's credibility by employing a "sit and squirm" test; and fourth, by finding that caring for a child is inconsistent with having a disability. As Plaintiff's first two arguments both involve the treating physician's opinion, those arguments will be addressed together first. Plaintiff's third and fourth

arguments involving the ALJ's assessment of Plaintiff's credibility will then be addressed together.

### A.      Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore,

the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at \*6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at \*7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of [her] symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding," and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference). Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'" *Ritchie v. Comm'r of Soc. Sec.*, No. 12-

2405, 2013 WL 5496007, at *3 (6th Cir. Oct. 4, 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

### B. Treating Source Opinion

It is undisputed that Dr. Byrd is a treating physician subject to the treating source rule. Dr. Byrd provided a treating source statement on behalf of Plaintiff that supports a finding of disability based on Plaintiff's alleged back, shoulder, and neck pain (Tr. 267-69). Dr. Byrd opined Plaintiff's ability to work was severely limited, indicating Plaintiff was capable of only occasional (defined as ¼ to 2 ½ hours) standing, sitting, walking, driving, bending, or data entry during a workday and occasional carrying or lifting of no more than five pounds. The ALJ discounted Dr. Byrd's opinion, however, finding Dr. Byrd's treatment notes were not supportive of her opinion that Plaintiff was incapable of sedentary work. The ALJ found that Dr. Byrd's treatment notes "show only conservative treatment" of Plaintiff's pain and injuries. After "[c]onsidering the nature of treatment administered in this case as well as activities of daily living, including caring for an infant daughter," the ALJ decided not to assign controlling weight to Dr. Byrd's opinion (Tr. 24). Noting Dr. Byrd's records do not indicate any treatment of Plaintiff by Dr. Byrd after July 10, 2008, the ALJ assigned greater weight to the opinions of the consultative examiners, finding that the opinions of the consultative examiners were more detailed than Dr. Byrd's treatment records (Tr. 24).

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §

404.1527(d)(2) (now (c)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 545 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011). As stated in *Cole*, "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned.'" *Id.* at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)). In the same vein, the Sixth Circuit also recently took

issue with a stated good reason that the treating physician's opinion "conflicted with other evidence," noting the allegedly conflicting evidence must be specified and "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The Sixth Circuit further stated that "[a] more rigorous scrutiny of the treating source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. Although "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians . . . the regulations do not allow the application of greater scrutiny to a treating source opinion as a means to justify giving such an opinion little weight." *Id.* at 379-80 (citations omitted).

Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Wilson*, 378 F.3d at 544, 547. In *Cole*, the Sixth Circuit recognized that a violation of the "good reasons" rule could only be harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(c)(2). *Cole*, 661 F.3d at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure to specify the weight afforded to a treating physician or to outline sufficiently specific good reasons could be grounds for remand. *Gayheart*, 710 F.3d at

380, *Cole*, 661 F.3d at 939-40.

### 1. The ALJ's Failure to Explicitly State the Amount of Weight Assigned to the Treating Physician's Opinion

In his opinion, the ALJ did not specify the amount of weight he assigned to Dr. Byrd's opinion. Plaintiff argues that this is error under Sixth Circuit precedent and requires remand. Defendant argues that there is no requirement that the ALJ use specific words, and that the ALJ is only required to provide a clear rationale for giving less than controlling weight to the treating physician's opinion. Defendant argues that the ALJ did meet the requirement to give a clear rationale.

The Sixth Circuit has held the ALJ must make clear to subsequent reviewing authority the weight assigned to the treating source's opinion, and the reasons for that weight. *Wilson*, 378 F.3d at 545 (internal citations omitted). Where an ALJ does not assign a specific weight to a treating physician's opinion, "this alone constitutes error, as '[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Cole*, 661 F.3d at 938 (alteration in original) (quoting *Blakley*, 581 F.3d at 408). While Defendant is correct that the ALJ is not required to use specific words, the Court will only excuse a decision's procedural errors as harmless "[s]o long as the decision 'permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion.'" *Francis*, 414 F. App'x at 805 (internal citations omitted).

Here, the ALJ states that he is not assigning Dr. Byrd's opinion controlling weight. The ALJ does not specifically state whether he is assigning partial weight to Dr. Byrd's opinion, or giving Dr. Byrd's opinion no weight. The ALJ does, however, state that he is giving "greater weight to the opinions of the consultative examiners," from which it can be inferred that Dr. Byrd's opinion has been assigned some weight that is less than controlling and less than the

14

weight given the consultative examiners' opinions.  Therefore, I **FIND** that the ALJ's failure to more directly specify an amount of weight assigned to Dr. Byrd's opinion was harmless error in this case as the reviewing court is able to determine the weight given to Dr. Byrd's opinion was less than controlling and less than the weight given the consultative examiners' opinions, which meets the goal of the treating source regulation.

## 2.      The ALJ's Analysis of the Treating Physician's Opinion

A properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians.  SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").  The ALJ gave his reasons for discounting Dr. Byrd's opinion as follows:

> Although the claimant's treating physician, Dr. Byrd, opined that the claimant was severely limited by her physical impairments and incapable of minimal activity or sedentary work, her treatment notes are not supportive of this opinion, as the records show only conservative treatment.  An MRI of the cervical spine showed a broad base disc bulge at CF/6 with mild mass effect upon the existing nerve roots bilaterally more significant on the right.  Considering the nature of treatment administered in this case as well as activities of daily living, including caring for an infant daughter, I have not assigned controlling weight to the opinion of Dr. Byrd.  Furthermore, treatment records of Dr. Byrd evidence no treatment after July 10, 2008 (Exhibits 5F and 10F).  I have assigned greater weight to the opinions of the consultative examiners as these opinions recite the claimant's actual physical examination findings in far greater detail than reflected in Dr. Byrd's treatment records.

(Tr. 24).

The ALJ found that Dr. Byrd's treatment notes did not support her opinion that Plaintiff was incapable of performing sedentary work, as the treatment notes showed only conservative treatment (Tr. 24).  The ALJ's discounting of Dr. Byrd's opinion for this reason was proper,

because the ALJ may consider medication and other treatment when evaluating the intensity, persistence, and extent of a claimant's impairments.   20 C.F.R.  §  404.1529(c)(3)(iv)-(v); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 419 (6th Cir. 2011).   "[A claimant's] complaints of disabling pain are undermined by [her] non aggressive treatment." *McKenzie v. Comm'r, Soc. Sec. Admin.*, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000).   Dr. Byrd herself noted that Plaintiff's treatment was conservative in her attending physician's statement (Tr. 268).   The ALJ's decision that Plaintiff's conservative treatment is inconsistent with disability is supported by substantial evidence.

The other stated reasons of the ALJ for discounting the opinion of Dr. Byrd are not as clear cut.   The ALJ also found Plaintiff's "activities of daily living, including caring for an infant daughter," were inconsistent with Dr. Byrd's opinion (Tr. 24).   Certainly, a "claimant's ability to do certain activities . . . does not constitute 'good reasons' for [discounting the treating physician's opinion] when the claimant's testimony and other record evidence contradict the ALJ's finding." *Cole*, 661 F.3d at 939 (citing *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 652 (6th Cir. 2011)).   Plaintiff complains about the ALJ's use of the term "infant," noting the care or help her young daughter actually provides to her.   Plaintiff's daughter was almost ten years old at the time of Plaintiff's hearing before the ALJ (Tr. 38), and while Plaintiff's daughter may be a legal "infant" as she is still a minor, she is not an "infant" in the common usage meaning "baby."   The use of the word infant, however, does not undermine the ALJ's finding that Plaintiff's daily activities were inconsistent with Dr. Byrd's extreme limitations given her self-acknowledged conservative treatment of Plaintiff.

The ALJ also gave greater weight to the opinions of the consultative examiners stating he did so because the consultative examiners' opinions "recite the claimant's actual physical

examination findings in far greater detail than reflected in Dr. Byrd's treatment records" (Tr. 24). "[T]he conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force . . . ." *Gayheart*, 710 F.3d at 377. Here, the ALJ provides little to no analysis or scrutiny of the nontreating physicians' opinions, other than noting that they are more detailed. However, Dr. Byrd's own conservative treatment of Plaintiff justifies the ALJ's decision given the findings of the consultative examiners.

Although some of the ALJ's stated reasons were not as good as others, I find the ALJ's decision to give greater weight to the opinions of the consultative examiners than to Dr. Byrd's opinion is supported by substantial evidence in compliance with the treating physician rule. The inconsistency between Dr. Byrd's own treatment notes, showing only conservative treatment, and Dr. Byrd's opinion of Plaintiff's extreme impairment is a "good reason" not to assign Dr. Byrd's opinion controlling weight and supports assigning Dr. Byrd's opinion less weight than the weight given to the consultative examiners' opinions. Further, this decision is supported by substantial evidence in the record, including the objective test results, the consultative physicians' opinions, and Dr. Byrd's own assessment that Plaintiff's treatment was conservative. As the ALJ provided a "good reason" supported by substantial evidence to discount Dr. Byrd's opinion, I **FIND** that the ALJ complied with the treating source rule.

### C. Plaintiff's Credibility

The ALJ did not find the Plaintiff credible, in large part because the ALJ found that the care Plaintiff provides for her daughter, as well as Plaintiff's lack of cervical collar at the hearing, were inconsistent with disability. Plaintiff argues that the ALJ improperly employed a "sit and squirm" test with regard to the lack of the cervical collar. Plaintiff further argues that

the ALJ erred by finding Plaintiff's care for her daughter is inconsistent with disability, as the ALJ did not consider Plaintiff's activities accurately or in context. Defendant argues that the ALJ properly considered Plaintiff's credibility, as the objective medical evidence did not indicate that Plaintiff's condition was of disabling severity, so the ALJ properly considered other circumstances that cast doubt on her credibility.

It is the ALJ's task to determine the credibility of the claimant, not the court's. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Rogers*, 486 F.3d at 247. The ALJ is not required to accept Plaintiff's subjective complaints, and the ALJ may properly consider Plaintiff's credibility when determining whether Plaintiff is disabled. *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010) (quoting *Jones*, 336 F.3d at 475). The court gives the ALJ's credibility determinations great weight, as the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). An ALJ may not determine the claimant's credibility merely on intuition, however. *Kalmbach*, 409 F. App'x at 863. The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Cunningham*, 360 F. App'x at 613 (quoting SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

An ALJ may discount a claimant's credibility based on daily activities that are inconsistent with the claimant's complaints. *Meece*, *v. Barnhart*, 192 F. App'x 456, 467 (6th Cir. 2006). A claimant's subjective complaints of disabling pain may be contradicted by daily activities such as walking, washing dishes, grocery shopping, dusting, laundry, and occasional

driving.  *Moses v. Comm'r of Soc. Sec.*, 402 F. App'x 43, 47 (6th Cir. 2010).  While daily activities that are inconsistent with the claimant's complaints may be used to discount the claimant's credibility, a claimant's ability to perform some household activities intermittently "when his pain level allows him to do so is not inconsistent with [claimant's] claim that his pain prevents him from engaging in regular and continuous employment."  *Meece*, 192 F. App'x at 466.

Here, the ALJ discounted Plaintiff's credibility based upon "the absence of significant objective and laboratory medical findings which provide confirmation of an impairment that could reasonably be expected to cause the subjective complaints, and based on the relatively mild to moderate pathology documented by the clinical examinations, and considering the claimant's reported activities of daily living, which includes caring for her infant daughter . . ." (Tr. 23).  The ALJ also discounted Plaintiff's credibility because her "presentation and testimony at the hearing do not coincide with the medical evidence of record," as Plaintiff "was not wearing her cervical collar at the hearing, thus indicating that her pain was manageable," despite her allegations regarding the severity of her neck pain (Tr. 23).  The ALJ found that all of these things provided him "an indication as to the intensity, persistence and limitations caused by the subjective complaints," and he found that Plaintiff's subjective allegations were unsupported by the record as a whole (Tr. 23-24).

Plaintiff contends that the ALJ erred by improperly employing a "sit and squirm" test regarding Plaintiff's lack of cervical collar at the hearing.  Plaintiff argues that an ALJ may not "apply a 'sit and squirm' test to reject a claimant's subjective complaint based solely upon the ALJ's failure to observe outward manifestations of pain during a hearing" [Doc. 15 at Page ID # 69].  Plaintiff notes that she testified repeatedly about her severe pain, and Plaintiff argues that

the ALJ improperly rejected her subjective complaints because she did not present an outward manifestation of pain at the hearing by not wearing her cervical collar. Defendant argues that where there is a lack of objective medical evidence to support a claimant's subjective allegations, the ALJ may consider other factors when determining the credibility of the claimant's subjective allegations. Defendant argues that even the treating physician, Dr. Byrd, found only "mild" and "minimal" pathology, and cites precedent that the court defers to the ALJ's assessment of credibility in situations where it is supported by an adequate basis and where there is an absence of sufficient objective medical evidence to support the subjective allegations [Doc. 17 at Page ID # 85 (citing *Walters*, 127 F.3d at 531)].

As the treating physician's notes and other medical evidence indicate only "mild" and "minimal" injuries to the discs in Plaintiff's neck, I **FIND** that the ALJ's consideration of other factors as to Plaintiff's credibility was appropriate. Further, I **FIND** that the ALJ's consideration of Plaintiff's lack of a cervical collar at the hearing was reasonable, and his credibility assessment is supported. The ALJ's assessment was not based on Plaintiff's lack of outward manifestations of pain, but rather that Plaintiff chose not to wear the pain-reducing cervical collar prescribed by her physician. "[I]t is appropriate for the ALJ to consider a claimant's treatment (other than medication) in evaluating his or her symptoms and pain, and a claimant must follow *prescribed* treatment in order to obtain benefits absent good reason." *Johnson v. Comm'r of Soc. Sec.*, No. 12-2249, 2013 WL 5613535, at *8 (6th Cir. Oct. 15, 2013). If the ALJ had considered that Plaintiff did not cry, grimace, or show other physical manifestations of her pain during the hearing, the ALJ might have improperly applied a "sit and squirm" test. But here, where the ALJ considered the fact that the Plaintiff chose not to wear a device prescribed by her physician to reduce her pain, I **FIND** that the ALJ's discounting of Plaintiff's credibility

is appropriate and supported by substantial evidence.

Plaintiff also argues that the ALJ erred by finding that caring for a child is inconsistent with disability. Plaintiff argues that the ALJ improperly considered her daily life activities, because precedent is clear that intermittent ability to perform household and personal chores is not inconsistent with disability. Defendant argues that the ALJ properly considered Plaintiff's daily activities, including providing care for her daughter, in finding that Plaintiff was not credible. Defendant argues Plaintiff does not receive assistance from other family members besides her daughter and that Plaintiff is able to drive her daughter to school. However, the record shows Plaintiff's son mows the lawn (Tr. 125), Plaintiff's daughter does certain household chores (Tr. 38, 123), and Plaintiff's friend takes her grocery shopping (Tr. 38).

As argued by Defendant, however, the ALJ's credibility assessment was not based on just childcare and the absence of a neck collar, but rather was based on an examination of the entire record and Plaintiff's demeanor at the hearing. I **FIND** the ALJ's decision to discount Plaintiff's credibility was supported by substantial evidence in the record.

## V.    CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[1] that:

> 1)  Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**.

---

[1]   Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

2)  The Commissioner's motion for summary judgment [Doc. 16]
    be **GRANTED.**

3)  The Commissioner's decision denying benefits be
    **AFFIRMED.**

                        s/ *Susan K. Lee*
                        SUSAN K. LEE
                        UNITED STATES MAGISTRATE JUDGE